SHELL OIL COMPANY, Appellant, v NEW YORK STATE TAX COMMISSION et al., Respondents. (Action No. 1.)

SHELL OIL COMPANY, Appellant, v NEW YORK STATE TAX COMMISSION et al., Respondents. (Action No. 2.)

MOBIL OIL CORPORATION, Appellant, v JAMES H. TULLY, JR., et al., Constituting the New York State Tax Commission, et al., Respondents. (Action No. 3.)

Third Department, January 6, 1983

82 

APPEARANCES OF COUNSEL

*Miller & Chevalier* (*John S. Nolan* and *James W. Midgley* of counsel), *Rosenstock & Turner* (*John G. Turner, Jr.,* and *Daniel J. Centi* of counsel), and *J. Lloyd Kennedy* for Shell Oil Company, appellant.

*Donovan Leisure Newton & Irvine* (*Thomas R. Trowbridge, III,* and *Maria T. Galeno* of counsel), *James P. Shaughnessy, Bond, Schoeneck & King* (*Richard L. Smith* of counsel) and *Anthony R. Corso* for Mobil Oil Corporation, appellant.

*Robert Abrams, Attorney-General* (*Peter H. Schiff, Francis V. Dow* and *Betsy Broder* of counsel), for respondents.

LEVINE, J.

These appeals, which we consider jointly for purposes of determination, concern various statutory and constitutional challenges to State enforcement of section 182 of the Tax Law as added by chapters 271 and 272 of the Laws of 1980 and amended by chapter 1043 of the Laws of 1981. In response to the "severe financial problem" facing New York's public transportation system, the State enacted chapters 271 and 272 of the Laws of 1980 (the Act) to create a special fund, known as the "regional transportation operating and capital assistance fund" under a new section 72-a of the State Finance Law, from which allocations would be made to various regional transportation authorities. Under the Act, the fund is financed through a new section 182 of the Tax Law, which imposes an additional franchise tax on certain oil corporations in the amount of 2% of their New York gross receipts from the sale of *all* of their products, petroleum or otherwise. The Act became effective June 18, 1980, and provided that the tax shall be imposed for "taxable years ending on or after the date on which this act shall have become a law" (L 1980, ch 271, § 13, as renum by L 1980, ch 272, § 1).

The Act employs the phrase "oil company" to define the class of enterprises subject to the tax. Initially, the definition included all corporations engaged in operations producing, refining or selling petroleum, except that corporations solely engaged in selling petroleum who sold not more than 60 million gallons in New York during their immediately preceding taxable year were expressly excluded, and hence not subject to any tax on their New York gross receipts (former Tax Law, § 182, subd 2, par [a], as added by L 1980, ch 271, § 4, as renum by L 1980, ch 272, § 1). However, responding to a Special Term determination that the foregoing classification violated equal protection by exempting companies engaged solely in selling petroleum in limited quantities from the tax but taxing the gross receipts of all sales "from 'dollar one'" by other companies (*Merit Oil of N.Y. v New York State Tax Comm.*, 111 Misc 2d 118), the Legislature retroactively amended section 182 (subd 2, par [a]) of the Tax Law to

redefine "oil company". The new definition includes "every vertically integrated petroleum corporation", which in turn is defined as a corporation producing more than 100,000 average barrels of crude oil per day, having a refining capacity in excess of 175,000 average barrels of crude oil per day and which distributes for marketing gasoline, motor fuels and other similar products derived from such crude oil (L 1981, ch 1043, § 68). Plaintiffs and 15 other major oil corporations presently fall within the definition.

Because of its overriding fear that the bare imposition of the tax would result in its being added to the price of petroleum products sold in the State and thereby fuel the inflationary spiral (see statement of legislative findings; declaration of purpose, L 1980, ch 271, § 1, as added by L 1980, ch 272, § 1), the Legislature provided that the burden of the gross receipts tax was to be borne by the oil companies and not passed on to consumers. This intent was effectuated through enactment of an express prohibition against the passing on of the tax (the "anti-pass-through" provision) contained in section 182 (subd 11, par [a]) of the Tax Law, directing that the tax "shall be a liability of the oil company, shall be paid by such company and shall not be included, directly or indirectly, in the sales price of its products sold in this state". This provision also requires an oil company subject to the tax to file with its return a report certifying under oath that it has not included the tax in the sales price of its products sold in this State (Tax Law, § 182, subd 11, par [a].)

Furthermore, because of the supervening importance in the entire statutory scheme of the anti-inflationary policy embodied in the anti-pass-through provision and because of apprehension of a possible adverse result of litigation challenging its validity, the Legislature further enacted the so-called "self-destruct" provisions of the Act. Under those provisions, the tax ceases to be in force and effect upon a judicial or administrative agency determination preventing enforcement of the prohibition against pass through (L 1980, ch 271, § 12, as renum and amd by L 1980, ch 272, §§ 1, 5).

The anticipated legal challenges to the legislation were soon forthcoming. Among them were (1) a suit by plaintiff Mobil Oil Corporation (Mobil) and other oil companies (plaintiff Shell Oil Company [Shell] not included) instituted in the United States District Court for the Northern District of New York challenging the anti-pass-through provision, but not the tax itself; (2) an action in State Supreme Court by the Merit Oil Corporation, previously alluded to, addressed to the earlier definition of "oil company"; and (3) the instant actions, challenging both the anti-pass-through provision and the statute as a whole. Mobil's action in the Federal court alleged that the statutory prohibition against passing through the tax was invalid under various provisions of the United States Constitution, including the supremacy clause (because of preemption by Federal petroleum price regulation), the commerce clause and the due process clause. The District Court denied defendant's motion to dismiss the action under the Federal Tax Injunction Act (US Code, tit 28, § 1341), which deprives the Federal courts of jurisdiction regarding challenges to State tax laws if an adequate remedy therefor exists in the State court system. The court held that the anti-pass-through provision was enacted pursuant to the State's police power to regulate prices, was separate and distinct from the tax provisions of the Act and was, therefore, not insulated from a challenge to its validity in the Federal courts by the Tax Injunction Act (*Mobil Oil Corp. v Tully*, 499 F Supp 888, 895). That determination was affirmed by the United States Court of Appeals for the Second Circuit (*Mobil Oil Corp. v Tully*, 639 F2d 912, cert den *sub nom. Tully v New England Petroleum Corp.* 452 US 967). The District Court further concluded that the anti-pass-through provision of the Act violated the supremacy clause, because it was pre-empted by the Federal Emergency Petroleum Allocation Act (US Code, tit 15, §§ 751-760h) and the Mandatory Petroleum Price Regulations (10 CFR Part 212). It, therefore, granted summary judgment to the plaintiffs, enjoining the State from enforcing the anti-pass-through provision (*Mobil Oil Corp. v Tully*, 499 F Supp 888, 909-910). The court did not reach the alternative constitutional challenges to that provision.

The District Court's determination of invalidity based on pre-emption was affirmed by the United States Temporary Emergency Court of Appeals (*Mobil Oil Corp. v Tully,* 653 F2d 497). On appeal to the United States Supreme Court, however, the judgment was vacated, and the case was remanded for reconsideration in light of the expiration of the Emergency Petroleum Allocation Act on September 30, 1981 (*Tully v Mobil Oil Corp.,* 455 US 245). Actually, the District Court's invalidation of the anti-pass-through provision never took effect even before the action of the Supreme Court, since simultaneously with the granting of its judgment, the District Court stayed enforcement of the injunction and that stay continued during all appeals.

Preliminary to addressing the various challenges by plaintiffs to the State's enforcement of both the tax and the prohibition against its being passed on to consumers, and for the orderly presentation of our determination of issues thereby presented, we express our agreement with the decisions of the United States District Court and of the Court of Appeals for the Second Circuit (adopting Mobil's position before both courts) that the validity of the tax provisions of the Act may be considered separately and apart from that of the anti-pass-through provision. From our reading of the Act, the latter provision is severable from the remainder of the statute, except insofar as the self-destruct section may apply. We, therefore, first take up the issues raised concerning the validity of the tax provisions of the Act, next those concerning the statutory prohibition against pass through and finally the effect of the self-destruct provisions in the event of a determination invalidating the prohibition against pass through.

### I. *The Constitutional Challenges to the Tax Provisions of the Act.*

■ The major challenge to the tax provisions of the Act centers on the constitutionality of the current statutory definition of "oil company", identifying the corporations whose gross receipts are subject to the tax. First, it is argued that the definition denies plaintiffs the equal protection of the laws in thereby exempting various other major oil industry competitors who either are not vertically integrated or lack the significant production or refin-

ing capacity required by the statute. The case law does not support plaintiffs' position. When the challenge to a State tax statute is made on equal protection grounds, the Supreme Court has held that "[t]he States have a very wide discretion in the laying of their taxes * .* * The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value" (*Allied Stores of Ohio v Bowers,* 358 US 522, 526-527). It is only when the different tax treatment is shown to amount to "invidious discrimination" or is " 'palpably arbitrary' or 'invidious' " that it runs afoul of the equal protection clause (*Lehnhausen v Lake Shore Auto Parts Co.,* 410 US 356, 359-360). The tax is presumed to be constitutional and the burden is on the challenger to negate every conceivable rational basis to support it (*Lehnhausen v Lake Shore Auto Parts Co., supra,* p 364; *Madden v Kentucky,* 309 US 83, 88). Plaintiffs have failed to make any such showing. The Legislature could reasonably have concluded that the defined companies' corporate organization and the magnitude of their operations in every aspect of the petroleum industry, from the well to the gasoline pump, afforded the statutory class a market power and economic advantage over their competitors and special opportunities to obtain the benefit of the conditions existing in the world-wide market (see statement of legislative findings; declaration of purpose, L 1980, ch 271, § 1, as added by L 1980, ch 272, § 1). Indeed, as pointed out in Shell's brief, the fact that the 17 corporations presently falling within the statutory definition of "oil company" furnish 60% of New York's oil supplies supports that conclusion. The equal protection clause does not prevent a State from taxing such economic power and competitive advantages. In *Fox v Standard Oil Co.* (294 US 87, 100), a case of striking similarity on this issue, the Supreme Court held: "[a] chain, as we have seen, is a distinctive business species, with its own capacities and functions. Broadly speaking its opportunities and powers become greater with the number of the component links; and the greater they become, the more far-reaching are the

consequences, both social and economic. For that reason the state may tax the large chains more heavily than the small ones, and upon a graduated basis, as indeed we have already held * * * Not only may it do this, but it may make the tax so heavy as to discourage multiplication of the units to an extent believed to be inordinate, and by the incidence of the burden develop other forms of industry."

■ Nor does New York, through the revised, current definition of "oil company", unlawfully discriminate against interstate commerce, as plaintiffs also contend. Such a commerce clause violation is not established merely because the 17 companies presently falling within the definition happen to be engaged in interstate commerce, or because the avowed purpose of the amended definition of "oil company" was to promote competition by exempting smaller independent companies. Concededly, all of the petroleum products sold and consumed in New York come from without the State and a significant portion of New York's oil supplies come from other interstate companies not subject to the tax. Therefore, insofar as the tax itself is concerned, in neither purpose nor effect does it discriminate, through the definition of "oil company", against interstate petroleum products in favor of intrastate products, or against the statutory class in favor of New York companies similarly situated. The identical charge of discrimination was made to an almost identical statutory definition of affected companies in *Exxon Corp. v Governor of Maryland* (437 US 117). The Supreme Court's rejection of the commerce clause challenge to the definition of the class on discrimination grounds in *Exxon Corp.* (*supra,* at p 125), should be a fortiori controlling here, since in that case the effect of the definition was to exclude the affected oil companies totally from the Maryland market, not merely, as here, to impose a tax of 2% on their actual New York gross receipts.

■ Plaintiffs' remaining arguments on the validity of the taxing provisions of the Act do not merit extended discussion. The brief retroactive effect of the tax arising out of its application to plaintiffs' gross receipts for their entire taxable year within which the Act became law (i.e., June 18, 1980) does not offend due process under the criteria set

forth in *United States v Darusmont* (449 US 292). Nor does the hypothetically uneven effect of that limited retroactivity because of possible variations in corporate taxable years deny any "oil company" the equal protection of the laws. The administrative convenience of keying the tax to such companies' taxable years fully justifies any such discrepancy (*Carmichael v Southern Coal Co.,* 301 US 495, 511; *Matter of Kenning v Department of Taxation & Fin.,* 72 Misc 2d 929, affd 43 AD2d 815, mot to dismiss app granted 34 NY2d 667).

■ Lastly, with respect to plaintiffs' attack on the taxing provisions of the Act, we find no constitutional infirmity in the State's applying the tax to the sales of nonpetroleum products of the oil companies, while not taxing similar sales by their non-oil company competitors. Since, as previously concluded, the equal protection clause does not prevent large vertically integrated oil companies to be singled out for the purpose of imposing a State tax, it follows that the tax thus imposed may reach activities for which others not in the class are not taxed (*Lehnhausen v Lake Shore Auto Parts Co.,* 410 US 356, *supra; Illinois Cent. R. R. Co. v Minnesota,* 309 US 157, 163).

## II. *The Constitutional Challenges to the Statutory Prohibition Against Pass Through*

■ First to be considered among the attacks on the anti-pass-through provision is its asserted conflict with the Federal Emergency Petroleum Allocation Act and related regulations (US Code, tit 15, § 751 *et seq.;* 10 CFR Part 212), in violation of the supremacy clause. On this issue, we agree with the conclusions reached by the United States District Court and the Temporary Emergency Court of Appeals that, for the reasons stated in their opinions (*Mobil Oil Corp. v Tully,* 499 F Supp 888, affd 653 F2d 497), the Federal statute and regulations pre-empted the field of price regulation of petroleum products up to the point when the Federal statute expired on September 30, 1981 (see, also, *Matter of State of New York v Strong Oil Co.,* 87 AD2d 374). Therefore, enforcement of the prohibition against pass through was invalid for the period from the inception of the Act to the date of the expiration of the Federal statute, and plaintiffs were entitled to a declara-

tion of that invalidity. We defer consideration of the application of the self-destruct provision of the statute to that invalidity until a later section of this opinion.

Since apart from the effect of the Act's self-destruct provision, any invalidity attributable to pre-emption by now-expired Federal statute and regulation no longer applies, it is necessary for us to consider plaintiffs' challenge to the anti-pass-through provision on the ground that it unlawfully discriminates against interstate commerce. We accept, *arguendo,* the position of the State that the anti-pass-through provision represents its attempt to regulate prices under the police power, and that the Act's purpose to control inflation is a legitimate State objective. A legitimate goal under the State's police power does not justify employing means to achieve the goal that discriminates against interstate commerce, however. Price controls discriminating against commerce are not any more justifiable to combat inflation than to alleviate the effects of economic depression (see *Baldwin v G.A.F. Seelig, Inc.,* 294 US 511).

Our reading of the challenged provision and its legislative history fails to disclose any discriminatory purpose to penalize commerce in favor of local interests. As previously discussed, there are significant competitors of plaintiffs and the other members of the class who are engaged in interstate commerce and whose sales of petroleum products in New York are exempted entirely from the Act. There is also nothing in the statute or its legislative history to indicate that New York is anything but neutral with respect to any adverse consequences of the tax or the anti-pass-through provision on plaintiffs' operations outside of New York or on their non-New York customers.

█ Even in the absence of a discriminatory purpose, however, commerce clause invalidity can be established on the basis of the discriminatory *effect* of a challenged State tax or regulation. Determining whether there is such a discriminatory effect requires an examination of the entire statutory scheme of the challenged legislation and an assessment of whether its practical operation results in different treatment based upon the geographical location of the affected class, within or without the State (*Maryland*

*v Louisiana,* 451 US 725, 756; *Lewis v BT Inv. Managers,* 447 US 27, 37). The discriminatory effect of the statute may be manifested by its impact on a class of out-of-State products (*Philadelphia v New Jersey,* 437 US 617; *Dean Milk Co. v Madison,* 340 US 349), or a class of interstate economic entities (*Lewis v BT Inv. Managers,* 447 US 27, supra; *Hunt v Washington Apple Adv. Comm.,* 432 US 333). Most importantly here, the invalidity of a State statute under the commerce clause may arise out of discrimination visited upon a class of out-of-State *consumers* of interstate products; it is not limited to discrimination against classes of interstate commercial or industrial entities (*Maryland v Louisiana,* 451 US 725, 757-758, *supra*).

Based upon our review of the entire statutory scheme of the legislation and indeed under the very premises which led to the form of its enactment, we conclude that the anti-pass-through provision works a discrimination violative of the commerce clause. Several factors are persuasive of that conclusion. First, undeniably, the State, through the anti-pass-through provision, is seeking to prevent an increase in the New York retail price of plaintiffs' petroleum products attributable to a cost of sale factor which the State itself created. The State thus seeks to exact tax revenues from New York sales of plaintiffs' products, but to shield its citizens from the economic impact of the tax. Next to be considered is the conclusion reached by the United States Temporary Emergency Court of Appeals, in forecasting conflict with Federal price regulation, that the effect of the pass-through prohibition will be for plaintiffs and other companies in the statutory class to attempt to recoup the cost of the tax on New York sales at the expense of non-New York purchasers of their products (*Mobil Oil Corp. v Tully,* 653 F2d 497, 501, *supra*). This conclusion is not only supported by elementary economic theory, but also by the very factors upon which the Legislature determined that the class of oil companies were "businesses clothed with a public interest" (statement of legislative findings; declaration of purpose, L 1980, ch 271, § 1, as added by L 1980, ch 272, § 1), namely, their market power and their role in the inflation of oil prices. The "historically [and unnaturally] high profits" of big oil cited in the statute itself (*id.*) thus

establish the practical ability of the 17 affected companies to pass on a substantial part of the tax to their out-of-State customers. Reading the anti-pass-through provision in conjunction with the remainder of the statutory scheme, as we must, it appears clear to us that the practical effect of the prohibition is to shift the direct burden of the tax from the companies' New York customers to their out-of-State customers. This inescapable conclusion places the instant case squarely under the holding in *Maryland v Louisiana* (451 US 725, *supra*). There, the Supreme Court invalidated Louisiana's "first use" tax on natural gas extracted from the outer continental shelf in the Gulf of Mexico and processed in Louisiana, because in the practical application of the tax and related legislation, Louisiana consumers of that natural gas were insulated from the burden of the tax, while at the same time the tax would be passed on to out-of-State consumers of gas from the same source. Likewise here, the potentially affected class, i.e., the taxed oil companies' customers in New York and elsewhere, are treated differently because of the pass-through prohibition and solely upon the basis of their geographical location. This alone is sufficient to sustain a determination of invalidity under the commerce clause (*Lewis v BT Inv. Managers,* 447 US 27, 42, *supra*). Nor is that conclusion avoided because no customers of exempted interstate oil corporations are subject to the burden, or because out-of-State customers of the statutory class of companies may shift their patronage to exempted firms and thereby escape the impact of the tax. This was equally so in *Maryland v Louisiana* (451 US 725, *supra*). There, too, not all non-Louisiana consumers of natural gas were affected by the tax, since natural gas extracted from the outer continental shelf accounted for less than 33% of all domestic natural gas production (*supra,* at p 729, n 2), and consumers of the taxed gas could equally have shifted their purchases to untaxed sources.[1]

---

1. Viewed solely as a regulatory price control measure apart from the tax, the differential impact on New York and out-of-State consumers of plaintiffs' products caused by the pass-through prohibition is sufficient for invalidity. In *Hunt v Washington Apple Adv. Comm.* (432 US 333, *supra*), the discriminatory treatment of the Washington apple industry was similarly held sufficient, although other apple-exporting States were unaffected by the North Carolina regulation.

The cases cited by the State to sustain the statutory prohibition against pass through as a regulation, despite its impact on out-of-State consumers (*Simpson v Shepard,* 230 US 352; *Milk Bd. v Eisenberg Co.,* 306 US 346) are inapposite. In neither case did the burden fall differently on members of the affected class for geographical reasons. Nor can the out-of-State impact of the tax burden be justified here, as the State contends, on the theory that interstate commerce can be made to "bear a fair share" of the cost of local government (*National Bellas Hess v Dept. of Revenue,* 386 US 753). The commerce clause does not permit New York to exact a share of that cost from interstate commerce without similarly requiring the comparable intrastate class to pay its fair share of the same tax burden.

On the basis of the foregoing, plaintiffs are entitled to summary judgment declaring the anti-pass-through provision of the statute to be unconstitutional, since a discriminatory State taxing statute is per se violative of the commerce clause (*Boston Stock Exch. v State Tax Comm.,* 429 US 318, 329; *Halliburton Oil Well Co. v Reily,* 373 US 64). Moreover, once the discriminatory effect has been established, it is not necessary to await an accurate assessment of the extent of the discrimination before affording relief (*Maryland v Louisiana,* 451 US 725, 759-760, *supra*).

The same result obtains if the challenged provision is examined separately from the tax and merely as a domestic price regulation. As previously pointed out, even as a regulation its practical effect is to treat out-of-State customers of the taxed companies differently. The provision, therefore, fails because the State has not sustained its burden of demonstrating justification for the measure "both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake" (*Hunt v Washington Apple Adv. Comm.,* 432 US 333, 353, *supra; Dean Milk Co. v Madison,* 340 US 349, 354, *supra*).

Finally, on this commerce clause issue, we may not ignore the over-all effect of shifting the tax burden on economic conditions in other States. The Legislature itself recognized the pivotal role of petroleum price increases in

causing the inflation/recession cycle affecting New York and the entire Nation (see statement of legislative findings; declaration of purpose, L 1980, ch 271, § 1, as added by L 1980, ch 272, § 1). If the anti-pass-through provision is upheld, the over-all inflationary impact of the tax would fall, not on New York's economy, but on those of its sister States. This in turn would invite the kind of reciprocal reprisals to protect the economies of those States which the commerce clause was designed to prevent (see *Baldwin v G. A. F. Seelig, Inc.*, 294 US 511, 522, *supra*).

In view of the foregoing determination, we need not reach plaintiffs' alternative challenges to the anti-pass-through provision.

### III. *Effect of the Invalidity of the Anti-Pass-Through Provision under the Self-Destruct Provisions of the Act.*

■ Section 12 of the Act (L 1980, ch 271, § 12, as renum and amd by L 1980, ch 272, §§ 1, 5) sets up three alternative contingencies, upon the happening of any one of which the entire Act self-destructs. They are: (1) an adjudication of the invalidity of the anti-pass-through provision "after exhaustion of all further judicial review" (L 1980, ch 271, § 12, subd [a], par [i]); (2) a determination by an appropriate Federal agency that the anti-pass-through provision violates the Federal Emergency Petroleum Allocation Act of 1973 or its accompanying regulations, "after exhaustion of all appeals therefrom" (L 1980, ch 271, § 12, subd [a], par [ii]); and (3) the issuance of a court order, during any such judicial or administrative proceeding, concerning the validity of the anti-pass-through provision, which prohibits State enforcement of the provision (L 1980, ch 271, § 12, subd [b]). The statute provides that, upon the happening of any of the foregoing events, "all of the provisions of this act shall cease to be in force and effect on the date provided for in subdivision (d) of this section" (L 1980, ch 271, § 12, subds [a], [b]). Subdivision (d) of section 12 in turn provides that the actual date that the provisions of the Act shall cease to be in force and effect upon the happening of any of the foregoing events, "shall be the·tenth day after the effective date" of the court order or administrative ruling

holding the anti-pass-through provision invalid or of the court order prohibiting the State from enforcing the anti-pass-through provision. It is further provided that the "tax shall continue in full force and effect until such day" (L 1980, ch 271, § 12, subd [d]).

Plaintiffs argue that the injunction against enforcement of the pass-through prohibition granted by the United States District Court was sufficient to trigger the self-destruct provisions of the Act. Therefore, they argue, Special Term's decision dismissing their complaints against collection of the tax erroneously misconstrued the self-destruct provisions and violated the primary legislative intent to void the tax *ab initio* upon any determination of the invalidity of the anti-pass-through provision. We disagree. Read literally, none of the statutory conditions for the cessation of the tax has been met. Since the District Court, simultaneously with its decision invalidating the anti-pass-through provision and enjoining State enforcement thereof, stayed the injunction pending further appeal, no "effective date" of any order prohibiting the State from enforcing the provision has yet come into existence (L 1980, ch 271, § 12, subd [d], par [ii]). Likewise, none of the litigation involving the validity of the provision has reached the stage of "exhaustion of all further judicial review" (L 1980, ch 271, § 12, subd [a], par [i]). Thus, the triggering events have not yet occurred to void the tax. The legislative intent is obvious and is revealed on the face of the statute, namely, that liability for the tax will not cease until there has been a final and irrevocable[2] appellate determination that the prohibition against pass through of the tax is legally unenforceable.

On the other hand, we cannot disregard the probable consequences of permitting the collection of the tax until final appellate review if, as we believe, that determination will be adverse to the State. If and when invalidity is

---

2. The 10-day lag provided in the statute between the effective date of cessation of the tax and the effective date of final appellate determination of invalidity or the effective date of any prohibition against enforcement of "anti-pass through" appears clearly to be intended to give the State an opportunity to move for reargument, apply for stays of the prohibition, etc., thereby assuring that all avenues of keeping the anti-pass-through provision alive have been exhausted.

finally determined upon final appellate review, no legally enforceable mechanism will exist to prevent plaintiffs and the other oil companies from then passing on to their New York customers any portion of the tax they previously paid which had not already been shifted to out-of-State sales.[3] Any such recoupment would unquestionably defeat the clearly expressed intent of the Legislature that no tax shall be levied with respect to which the burden can be added to the cost of petroleum products in New York. The Act states that "[i]t is in the clear public interest to do nothing that will contribute to further increases in the price of petroleum products to consumers" and that the "tax shall cease and terminate if such tax shall be permitted * * * to be included either directly or indirectly in the sales price of the products of the oil company" (L 1980, ch 271, § 1, as added by L 1980, ch 272, § 1). Thus, a dominant theme of the legislation is that tax liability shall cease with respect to any portion of the tax which can be passed on in the price of petroleum products. This legislative purpose explains why, even before a final appellate determination of invalidity, the tax is temporarily suspended during the period of existence of any *effective* lower court order barring enforcement of the anti-pass-through provision (L 1980, ch 271, § 12, subd [c], as renum and amd by L 1980, ch 272, §§ 1, 5).

We think that these dual legislative purposes can be reconciled by permitting the tax liability to *accrue* until a final appellate determination of the challenge to the anti-pass-through provision, but requiring the State to refund taxes collected for any period during which that provision is ultimately held invalid, to the extent that such taxes were not passed on to out-of-State customers.[4] We note that

---

**3.** Indeed, any attempt by the State to shield New York petroleum consumers from recoupment of the companies' losses attributable to the State's enforcement of the invalid anti-pass-through provision would have grave substantive due process implications. By way of analogy, it has been held that denial by the State of recovery of taxes exacted in violation of the Constitution is itself in contravention of the 14th Amendment (*Carpenter v Shaw,* 280 US 363, 369; *Ward v Love County,* 253 US 17, 24).

**4.** Thus, if Federal pre-emption is the sole final basis for invalidation, only the portion of the tax collected prior to the expiration of the Emergency Petroleum Allocation Act would be required to be refunded. Limiting refunds to taxes not passed on to out-of-State consumers would prevent the affected companies from receiving a double

the Act provides for the deposit in bank accounts in the name of the Comptroller of all taxes, etc., collected by the Tax Commission, but that the Comptroller shall retain in his hands such amount as the Commissioner of Taxation and Finance may determine to be necessary for refunds (Tax Law, § 182, subd 12, as added by L 1980, ch 271, § 4, as renum and amd by L 1980, ch 272, §§ 1, 2, as renum by L 1981, ch 103, § 75). To implement our determination in this regard, we exercise our power to grant incidental equitable relief in declaratory judgment actions (see CPLR 3001; Siegel, New York Practice, § 440, p 584) to direct defendant Tully or his successor as Commissioner of Taxation and Finance to determine that all funds heretofore and hereafter collected as taxes on the gross receipts of plaintiffs and the other affected companies are necessary for refunds, and to advise the Comptroller to that effect.

The orders and judgments should be modified, on the law, by declaring that (1) the anti-pass-through provision is void under the commerce clause and, for the period up to October 1, 1981, also void under the supremacy clause, and (2) the liability for the tax in question shall be permitted to accrue until a final appellate determination of the challenge to the anti-pass-through provision, and the State is required to refund taxes collected for any period during which that provision is ultimately held invalid, to the extent that such taxes were not passed on to out-of-State customers, and by adding thereto a direction to defendant State Commissioner of Taxation and Finance to determine that, pending final appellate determination of the challenge to the anti-pass-through provision, all taxes collected are necessary for refunds, and to notify the State Comptroller to that effect, and, as so modified, affirmed, without costs.

MAHONEY, P. J., SWEENEY, KANE, and CASEY, JJ., concur.

Orders and judgments modified, on the law, by declaring that (1) the anti-pass-through provision is void under the

recoupment of the taxes paid. A determination of the appropriate amount of any refund sought hereunder can be made through application of the anti-pass-through certification procedures contained in the statute (Tax Law, § 182, subd 11, pars [a], [g]).

commerce clause and, for the period up to October 1, 1981, also void under the supremacy clause, and (2) the liability for the tax in question shall be permitted to accrue until a final appellate determination of the challenge to the anti-pass-through provision, and the State is required to refund taxes collected for any period during which that provision is ultimately held invalid, to the extent that such taxes were not passed on to out-of-State customers, and by adding thereto a direction to defendant State Commissioner of Taxation and Finance to determine that, pending final appellate determination of the challenge to the anti-pass-through provision, all taxes collected are necessary for refunds, and to notify the State Comptroller to that effect, and, as so modified, affirmed, without costs.