OPINION OF THE COURT
Simons, J.
 Plaintiffs Donald J. Trump and Richard Pellicane seek a judgment declaring that Tax Law article 31-B which imposes a 10% tax on gains derived from real property transfers {see, Tax Law §§ 1440 — 1449-c), violates the equal protection clause of both the United States Constitution (US Const 14th *23 amend) and the New York State Constitution (NY Const, art I, §11) and a permanent injunction prohibiting defendant Commissioner of the Department of Taxation and Finance from enforcing it. Special Term upheld the statute and plaintiffs are before us by direct appeal from its judgment (see, NY Const, art VI, § 3 [b] [2]; CPLR 5601 [b] [2]). We affirm Special Term’s holding but modify the judgment to declare that Tax Law article 31-B (L 1983, ch 15, § 181) does not violate either the State or Federal Constitution (see, Lanza v Wagner, 11 NY2d 317, 334).
Article 31-B was enacted in 1983 as part of a comprehensive package of tax measures designed to provide necessary revenues for the 1983-1984 State budget (L 1983, ch 15). It imposes a tax of 10% on gains derived from the transfer of real property within the State payable by the transferor (see, Tax Law §§ 1441,1442). The statute defines “gain” as “the difference between the consideration for the transfer of real property and the original purchase price of such property, where the consideration exceeds the original purchase price” (id. § 1440 [3]). It also contains several exemptions from the tax, but for purposes of this appeal the only relevant exemption is for transfers in which the consideration is less than one million dollars (see, id. § 1443 [1]). In determining whether a transfer is for one million dollars or more, the statute provides different modes of treatment for condominiums or cooperatives sold by the developer, on the one hand, and subdivided parcels of real property improved with residences on the other. In the former situation, if the aggregate consideration to the developer for the sale of the entire development equals or exceeds one million dollars and there is a gain, the initial sale of any individual unit will be taxed on a proportionately allocated basis. When a developer sells a subdivided plot of land improved with individual residences, however, the price of the single residence is deemed the consideration for purposes of the one million dollar exemption (see, id. § 1440 [7]).[1]
Plaintiff Donald Trump is a real estate developer who holds a beneficial interest in a joint venture known as the Trump-Equitable Fifth Avenue Company, the developer of Trump Tower in Manhattan. The 38 floors of Trump Tower house 266 *24 residential units that are being sold pursuant to a condominium plan for a projected gross revenue of $277 million. Since the passage of article 31-B, Trump-Equitable has sold several units in Trump Tower and, as transferor, has paid the 10% gains tax imposed by that statute under protest. Plaintiff Richard Pellicane is a real estate developer in Suffolk County who is the fee owner of several parcels of real property in that county that are subject to the 10% gains tax imposed by article 31-B.
Plaintiff Trump instituted an action in Supreme Court, New York County, and plaintiff Pellicane brought his action in Supreme Court, Suffolk County. Both plaintiffs asserted that the 10% gains tax violates the equal protection clause of the Federal and State Constitutions in that it creates arbitrary and discriminatory classifications between: (1) transferors who sell their real property for one million dollars or more and those who sell property for less than one million dollars, (2) condominium/ cooperative developers and developers of subdivided residential plots and (3) transferors of real property and transferors of other tangible and intangible property. In addition, plaintiff Pellicane alleged that the gains tax violates the due process clause of the United States and New York State Constitutions because it is a retrospective tax (see, US Const 14th amend; NY Const, art I, § 6). After answering, defendant moved to dismiss the Trump complaint and the Pellicane amended complaint for failure to state a cause of action and plaintiffs cross-moved for summary judgment. Plaintiffs’ motion to consolidate the actions and remove the Pellicane action to Supreme Court, New York County, was granted and the actions were consolidated. Special Term upheld the gains tax in its entirety, denied plaintiffs’ cross motions for summary judgment and granted defendant’s motion to dismiss.
On this appeal, plaintiffs raise two equal protection challenges to the constitutionality of the gains tax. First, they assert that by exempting transfers for less than one million dollars the gains tax treats identically situated taxpayers differently on the basis of varying levels of gross receipts, e.g., a taxpayer who sells his property for $999,999 and has a gain of $500,000 owes no tax whereas a taxpayer who sells his property for $1,000,001 and has a similar $500,000 gain must pay a tax of $50,000. Thus, plaintiffs allege that the gains tax is indistinguishable from gross receipts taxes that have been declared unconstitutional based upon findings that the gross receipts have no rational correlation to the amount of the gain. Second, plaintiffs contend that by requiring the aggregation of consideration in *25 connection with the sale of condominium and cooperative dwellings for purposes of meeting the one million dollar taxing threshold, but not for the sale of subdivided parcels with improved residences, the gains tax unconstitutionally discriminates against developers of condominiums and cooperative dwellings.
The scope of our review is narrow. Taxing statutes, like other social and economic legislation that neither classify on the basis of a suspect class nor impair a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate State purpose (Western & S. Ins. Co. v Board of Equalization, 451 US 648, 657). Moreover, the statute enjoys a presumption of constitutionality which “can be overcome only by the most explicit demonstration that [the] classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it” (Madden v Kentucky, 309 US 83, 88 [nn omitted]; see, Maresca v Cuomo, 64 NY2d 242,250; Allied Stores v Bowers, 358 US 522, 527-528). When examining classification, it should be remembered that in the field of taxation the Legislature is “not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value” (Allied Stores v Bowers, supra, at p 527) but rather it has “large leeway in making classifications and drawing lines which in [its] judgment producéis] reasonable systems of taxation” (Lehnhausen v Lake Shore Auto Parts Co., 410 US 356, 359; Shapiro v City of New York, 32 NY2d 96, 103). Thus, the equal protection clause does not prevent State Legislatures from drawing lines that treat one class of individuals or entities differently from others unless the difference in treatment is “palpably arbitrary” or amounts to an “invidious discrimination” (see, Lehnhausen v Lake Shore Auto Parts Co., supra, at p 360; Allied Stores v Bowers, supra, at p 527; Shapiro v City of New York, supra, at p 103).
Addressing the discriminatory effect of the exemption for transfers of real property for less than one million dollars, plaintiffs contend that our decision is controlled by Stewart Dry Goods Co. v Lewis (294 US 550; see also, Merit Oil v State Tax Commn., 111 Misc 2d 118). In Stewart Dry Goods, the United States Supreme Court invalidated a graduated gross receipts tax imposed on the sale of retail merchandise because the rate of tax increased as the total gross receipts of sales increased. The statute taxed similar transactions differently, therefore, depending on the amount of receipts obtained from previous trans *26 actions.[2] The only conceivable justification for this different treatment was that a merchant’s net income and consequently his ability to pay the tax increased as his volume of sales increased {id., at pp 557-558). The court held this was not a rational basis for the tax because the gross receipts tax was imposed regardless of whether a merchant made a profit. Thus, merchants with a large volume of business but an actual net loss paid more tax than a low volume merchant with a substantial profit {id., at pp 560-561). Similarly, the statute at issue in Merit Oil imposed a 2% gross receipts tax on all companies engaged in importing, extracting, producing, refining, manufacturing, compounding or selling petroleum but granted retailers who sold not more than 60,000,000 gallons of petroleum during the preceding taxable year a total exemption (Tax Law § 182 [former 2] [a], as added by L 1980, ch 271, § 3). Special Term, relying exclusively on Stewart Dry Goods, found this classification of retailers violated equal protection because after the 60,000,000 gallon threshold was reached the retailer was taxed on gross receipts for all sales from “dollar one” (Merit Oil v State Tax Commn., 111 Misc 2d 118, 120, supra).[3]
Stewart Dry Goods and Merit Oil stand for the proposition that gross receipts taxes that treat similarly situated taxpayers differently based on sales volume violate equal protection because they are imposed without regard to profits. Stated differently, Stewart holds that the Legislature may not classify taxpayers on the basis of gross receipts or sales volume for the purpose of imposing different tax rates and then utilize the amount of gross receipts to determine the amount of tax due as well (see, Mobil Oil Corp. v Tully, 113 Misc 2d 885, 886, affd sub nom. Shell Oil Co. v State Tax Commn., 91 AD2d 81). This case is distinguishable from Stewart Dry Goods and Merit Oil, however, because although liability for the tax imposed by article 31-B is determined by the amount of gross consideration, the actual calculation of the tax due depends entirely on the gain realized from the real property transfer. As Special Term recog *27 nized, “[t]he gross consideration of a million dollars or more merely sets the parameters of the class of property subject to the tax.” The tax imposed is not on the gross consideration received but rather on the gain that results when the consideration received for the transfer exceeds the original purchase price of the real property (see, Tax Law § 1440 [3]).
Plaintiffs also contend that the statutory definition of “original purchase price” does not adequately reflect the basis of the real property and will lead to imposition of the tax when a net loss is sustained (see, id. § 1440 [5]). The statute defines “gain”, however, as the difference between “consideration” (after deduction of brokerage fees) and the “original purchase price” (see, Tax Law § 1440 [1], [3], [5]) and the regulations promulgated by the Department of Taxation and Finance to implement the statute make it clear that all customary, reasonable and necessary costs related to the acquisition and improvement of real property are included in the original purchase price so that the tax will be imposed only in the case of a net profit (see, 20 NYCRR part 590).
The Legislature may establish the exemption at one million dollars for at least two related reasons despite the inequalities that may result. So long as it taxes only net gains, it rationally could believe that “generally speaking” profits increase as the amount of gross consideration received increases (see, Stewart Dry Goods Co. v Lewis, 294 US 550, 559, supra). This is especially true in light of the Legislature’s conceivable view that imposing the tax on every gain resulting from the transfer of real property, no matter how small the transaction, would be economically inefficient and counterproductive. Additionally, “[administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others * * * We cannot say that the expense and inconvenience of collecting the tax from small * * * [real estate transactions] would not be disproportionate to the revenue obtained” (Carmichael v Southern Coal Co., 301 US 495, 511; see also, Spatt v City of New York, 13 NY2d 618, 619; Matter of Kenning v State Dept. of Taxation & Fin., 72 Mise 2d 929, 933, affd 43 AD2d 815). Since it is established that the Legislature may exempt some taxpayers on this basis, where it draws the line “is peculiarly a question for legislative decision” (Carmichael v Southern Coal Co., supra, at p 511) especially in the field of taxation where, “even more than in other fields, legislatures possess the greatest freedom in classification” (Madden v Kentucky, 309 US 83, 88, supra).
*28 Turning to the Legislature’s different tax treatment of condominium and cooperative developers on the one hand and subdivided improved realty on the other, it is apparent that the classification employed is rationally related to the legitimate State purpose of raising the revenues necessary to finance the State budget and provide needed government services because: (1) condominium and cooperative developments involve greater administrative cost to State government as a result of more extensive special laws, regulations and inquiries than apply to subdivided improved realty (see, e.g., General Business Law §§ 352-e — 352-eeee [application of Martin Act to condominiums and cooperatives]; Real Property Law §§ 339-d — 339-ii [Condominium Act]); (2) condominium and cooperative developments, because they are more likely to occur in urban areas than subdivisions, make greater demands on needed public services; and (3) treating sales of condominium and cooperative units as separate tax transactions would entail greater administrative costs than in the case of subdivided realty, thereby reducing the net revenue produced by the tax. In addition, the Legislature rationally could have believed that the challenged classification would further the conceivable purposes of encouraging the development of individually owned residences while at the same time discouraging the rapid conversion of scarce rental apartments to condominiums and cooperatives.
These are legitimate State purposes justifying the classifications adopted, whether they are the purposes which actually motivated the Legislature or not, and inasmuch as the classifications are rationally related to their achievement, the legislation has a rational basis (see, Maresca v Cuomo, 64 NY2d 242, 251, supra; McGinnis v Royster, 410 US 263, 276).
Accordingly, the judgment of Supreme Court should be modified, with costs, to declare that Tax Law article 31-B (L 1983, ch 15, § 181) is constitutional and, as so modified, affirmed, with costs to defendants.

. Tax Law § 1440 (7) provides: “Transfer of real property shall also include partial or successive transfers pursuant to an agreement or plan to effectuate by partial or successive transfers a transfer which would otherwise be included in the coverage of this article, provided that the subdividing of real property and the sale of such subdivided parcels improved with residences to transferees for use as their residences, other than transfers pursuant to a cooperative or condominium plan, shall not be deemed a single transfer of real property.”

. The rate of tax for the first $400,000 of annual sales was V2oth of 1%. The rate increased on each additional $100,000 of sales between $400,000 and $1,000,000. On all sales over $1,000,000 the rate was 1%. The higher rate of tax applied only to the gross receipts in excess of the preceding bracket (see, Stewart Dry Goods Co. v Lewis, 294 US 550,554). Thus, the sale of a radio, say, for $50 at the beginning of the year was taxed at 1/2oth of 1% but the sale of an identical $50 radio after $1,000,000 in previous sales would be taxed at the rate of 1%.

. Although the opinion in Merit Oil refers to the tax as a “gross profits tax” it was in fact a “gross receipts” tax (see, Tax Law § 182 [former 1], [former 2] [b], as added by L 1980, ch 271, § 3).