MANHATTAN & QUEENS FUEL CORP., Respondent, v COUNTY OF NASSAU, Appellant.

Second Department, January 13, 1986

APPEARANCES OF COUNSEL

*Edward O'Brien, Acting County Attorney (Robert O. Boyhan* of counsel), for appellant.

*Carl S. Levine, P. C. (Kenneth L. Robinson* of counsel), for respondent.

## OPINION OF THE COURT

GIBBONS, J.

In this action we are called upon to determine whether the tax on gross receipts from sales of petroleum imposed by Tax Law article 13-A may be passed along to the purchaser, where the purchaser is the State or one of its political subdivisions. In our view, this question must be answered in the affirmative.

The material facts of this case are not in dispute. In June of 1983 plaintiff, a domestic corporation engaged in the marketing and distribution of fuel oil and other petroleum products, submitted a bid to defendant Nassau County on a contract for the sale and purchase of approximately 3,000,000 gallons of fuel oil and diesel fuel for the period July 1, 1983 to June 30, 1984. Plaintiff's bid did not contain a provision for payment of a petroleum gross receipts tax pursuant to Tax Law § 182-a. Although section 182-a permitted the tax imposed upon the gross receipts of certain oil companies to be passed through to purchasers, plaintiff, as a company primarily engaged in the sale of fuel oil for residential purposes, was not subject to the tax (Tax Law § 182-a [2]).

On or about July 12, 1983, defendant approved an award of the contract to plaintiff. However, prior to the award, the Legislature enacted a new consolidated gross receipts tax, article 13-A, effective July 1, 1983 (L 1983, ch 400, § 8). Article 13-A, unlike its predecessors, was applicable to the gross receipts of all competing petroleum businesses, thus including plaintiff and with certain exceptions, was to apply to virtually all petroleum sold in the State *(see,* joint Senate, Assembly memorandum, legislative bill jacket, L 1983, ch 400).

Plaintiff commenced performance under the contract on or about July 12, 1983, and included in its invoices to defendant the tax imposed upon its gross receipts. Defendant paid to plaintiff the entire amount billed for the fuel delivered, but refused to pay the gross receipts tax, claiming that it was exempt from such taxation.

Plaintiff commenced this action for breach of contract and

sought, *inter alia,* a money judgment and a declaration that defendant could not legally withhold payment of the 3¼% gross receipts tax from plaintiff. By its answer, defendant contended, as an affirmative defense, that it was exempt from payment of the tax set forth in Tax Law article 13-A. There being no issues of fact, the parties cross-moved for summary judgment. Special Term granted plaintiff's motion insofar as it sought a declaratory judgment, and, upon its action for damages, awarded judgment as to liability and ordered the matter set down for trial as to damages. This appeal followed. The only issue before us is whether defendant, as a municipal corporation, is exempt from payments of the gross receipts tax upon shipments of petroleum products purchased from plaintiff.

A review of the statutory history of the gross receipts taxes on petroleum is necessary for an understanding of the consolidated tax imposed effective July 1, 1983, and clarifies the source of the dispute between the parties to the instant action.

The first in a series of acts imposing a franchise tax on the gross receipts of certain oil corporations on the sale of all their products was enacted in 1980 (Tax Law § 182, as added by L 1980, ch 271, § 3). Tax Law § 182 imposed an annual franchise tax on oil companies in the amount of 2% of their New York gross receipts from the sale of all products, petroleum or otherwise, effective June 18, 1980 (L 1980, ch 271, § 3; *Shell Oil Co. v New York State Tax Commn.,* 91 AD2d 81, 84). As amended, the definition of oil company was limited to "vertically integrated petroleum corporation[s]" which, in turn, were defined as corporations producing more than 100,000 average barrels of crude oil per day, having a refining capacity in excess of 175,000 average barrels of crude oil per day and which distributed for marketing gasoline, motor fuels and other similar products derived from such crude oil (Tax Law § 182 [2] [a], as amended by L 1981, ch 1043, § 68). Only major oil companies were subject to the tax, under this definition *(see, Shell Oil Co. v New York State Tax Commn., supra,* at p 85). Tax Law § 182 (11) (as renum by L 1981, ch 103, § 75; repealed by L 1983, ch 18, § 3) provided that the burden of the gross receipts tax was to be borne by the oil companies, and not passed on to consumers.*

---

* This anti-pass-through provision was subsequently held to be in violation of the commerce clause, as the practical effect of the prohibition was to shift the direct burden of the tax from the oil companies' New York customers to

*(n. cont'd)*

In 1981, the Legislature passed an additional gross receipts tax upon petroleum (Tax Law § 182-a, as added by L 1981, ch 481, § 2). Tax Law § 182-a (1) imposed a three quarters of 1% tax on the gross receipts of oil companies from sales of petroleum allocated within the State. Here, however, oil company was defined (as amended) as "every corporation formed for or engaged in the business of importing or causing to be imported (by a person other than a corporation subject to tax under this section) into this state for sale in this state, extracting, producing, refining, manufacturing, or compounding petroleum" (Tax Law § 182-a [2] [a]). The Legislature explicitly exempted from the definition of oil company any corporation "principally engaged in selling fuel oil * * * used for residential purposes" (Tax Law § 182-a [2] [a], as amended by L 1981, ch 482, § 1, and L 1981, ch 1043, § 57).

Unlike the 2% gross receipts tax imposed under Tax Law § 182, there was no clause prohibiting a pass-through to consumers. However, as amended, "gross receipts" was defined to exclude receipts from sales of petroleum delivered after the effective date of the act to the State or any of its subdivisions *provided* that such sales were pursuant to a contract awarded or entered into prior to July 11, 1981, or pursuant to a contract entered into after such date pursuant to a bid submitted before such date (L 1981, ch 1043, § 62).

The legislative bill jacket contains a letter to the Governor by the Department of Taxation and Finance (the Department) analyzing the acts, stating: "Bill section 62 excludes from gross receipts subject to the ¾ of 1% gross receipts tax, receipts from sales made pursuant to *certain* contracts with the State of New York or any of its agencies, instrumentalities or political subdivisions where the receipts are from sales made on or after the date the tax was enacted" (emphasis supplied).

Accordingly, based on the plain language of the limited exclusion and the interpretation by the Department, the exemption applied only to existing contracts as of July 11, 1981, or to those contracts arising from bids submitted prior to that date. Thus, the tax became effective July 1, and governmental entities were exempt for the first year only, assuming a one-year contract, and a fiscal year beginning on

---

their out-of-State customers as they realistically would attempt to recoup the cost of the tax on New York sales *(see, Shell Oil Co. v New York State Tax Commn.,* 91 AD2d 81, 92-93).

July 1 or earlier. The statute did not exempt the State or its subdivisions for contracts entered into, or contracts arising from bids received, after July 11, 1981, and therefore the tax could be passed through under new contracts in succeeding fiscal years.

In addition, and in accord with the foregoing construction as a limited exclusion, an opinion of the State Comptroller (1982 Opns St Comp No. 82-233, p 293) stated that the purchase of gasoline by a municipality entered into under a State contract pursuant to a bid submitted on or after the effective date of the Laws of 1981 (ch 1043) must, in accordance with the statute, pay the amount listed for the gross receipts tax which is passed through to the consumer under the contract.

The legislative bill jacket is silent as to the reason for the limited exclusion, although on its face it appears to protect the integrity of municipal budgets already approved as of the effective date of the new tax.

Under the foregoing gross receipts taxing statutes, defendant Nassau County would not have been subject to the tax imposed by Tax Law §§ 182 or 182-a for purchases of petroleum from businesses such as plaintiff's. Section 182 contained the anti-pass-through provision, as well as a narrow definition of oil company, and section 182-a contained the limited exclusion, as well as a definition of oil company which explicitly excluded businesses primarily engaged in the sale of residential fuel such as plaintiff. Therefore, the absence of an anti-pass-through provision in Tax Law § 182-a had no effect upon plaintiff's customers.

A new consolidated gross receipts tax, article 13-A, was enacted in 1983 (Tax Law § 300 *et seq.*, as added by L 1983, ch 400, § 8). The purpose of the new measure as set down by the Legislature in the legislative bill jacket (L 1983, ch 400, § 8) was to allow "settlement agreement with certain oil companies that would provide for the resolution of certain outstanding litigation and controversies" *(see, Shell Oil Co. v New York State Tax Commn.,* 91 AD2d 81, *supra; Mobil Oil Corp. v Tully,* 689 F2d 186), and "replacement of the existing three-quarters of one percent and two percent gross receipts taxes with a single three and one-quarter percent gross receipts tax, effective for taxable years beginning after July 1, 1983, but ending before March 31, 1984" *(see,* joint Senate, Assembly memorandum, legislative bill jacket, L 1983, ch 400).

Article 13-A, unlike its predecessors, applied to "every

petroleum business * * * engaging in business, doing business, employing capital, owning or leasing property, or maintaining an office" in the State (Tax Law § 301 [a]). Section 301 imposed an annual tax of 3¼% on the "gross receipts from sales of petroleum where shipments are made to points within the state". Petroleum business was defined to include "every corporation and unincorporated business * * * importing * * * into this state for sale in this state, extracting, producing, refining, manufacturing, or compounding petroleum and every corporation and unincorporated business importing or causing to be imported * * * petroleum into this state for consumption by it in this state" (Tax Law § 300 [c]). Thus, previously exempt petroleum businesses became subject to the tax, notwithstanding their status as oil companies primarily engaged in the sale of fuel for residential purposes. Residential heating fuel sale, however, remained exempt through the device of defining "gross receipts" subject to the tax to exclude receipts from such sales (Tax Law § 303 [b] [1]). Conspicuously absent as an exclusion from the definition of gross receipts is any provision excluding the receipts from sales to the State or its political subdivisions (Tax Law § 303 [b] [1]-[5]). Material contained in the legislative bill jacket confirms a conclusion that the State and its political subdivisions, as purchasers from petroleum businesses, were not intended to be exempt from the tax. A budget report by the Division of the Budget summarized the new legislation, noting the new broad definition of petroleum business, and noting the exclusions from the definition of gross receipts (not including the State or its political subdivisions) as follows: "Section eight of the bill, effective July 1, 1983, adds a new Article 13-A to the Tax Law, imposing a privilege tax on all New York businesses, incorporated or unincorporated, engaged in importing (or causing the import of) petroleum for sale in this State, or in extracting, producing, refining, manufacturing or compounding petroleum. The tax, effective from July 1, 1983 to March 31, 1984 would be at the rate of 3-¼% of such businesses' gross receipts from sales of petroleum *(except certain sales for export, certain sales for resale, certain exchange sales, and sales of certain fuel oil and liquified or liquifiable gases used for residential purposes)" (see,* legislative bill jacket, L 1983, ch 400; emphasis supplied).

The legislative bill jacket also contains a joint Senate, Assembly memorandum in support of the new legislation which is in accord with the Division of Budget report, *supra,*

and states: "This measure equitably consolidates the existing gross receipts taxes imposed on the petroleum industry into a single tax on the gross receipts of all petroleum businesses, a tax measured by their gross receipts from sales of petroleum in this State. *This tax will apply to all competing petroleum businesses, and, with the exception of residential fuel and petrochemical feedstocks, to virtually all petroleum sold in the State*" (emphasis supplied).

In addition, the legislative interpretation is in accord with that adopted by the New York State Department of Taxation and Finance in a memorandum dated August 5, 1983, analyzing article 13-A and in a letter to the executive vice-president of the Empire State Petroleum Association, dated December 16, 1983. The Department memorandum states: "There is *no* exemption from this tax on sales made to governmental agencies. This includes sales to the United States or any of its agencies, New York State or any of its agencies, and any county, city, town or village government. There is also no exemption for sales made to not-for-profit organizations, religious institutions, school districts or any eleomosynary organization".

It is well established that the courts should defer to the interpretation given to statutes by the agencies responsible for their administration " 'if the interpretation is neither irrational, unreasonable, nor inconsistent with the governing statute' " *(Matter of Great Lakes-Dunbar-Rochester v State Tax Commn.,* 65 NY2d 339, 343, quoting from *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 597). We conclude that the Department's interpretation is reasonable. The only exemption for municipalities or the State appearing in article 13-A is in Tax Law § 305, which, insofar as is here pertinent, merely exempts from the definition of a "petroleum business" subject to the tax imposed by the article "an organization described in subdivision (a) of section one thousand one hundred sixteen of [the Tax Law]" i.e., the "state of New York, or any of its agencies, instrumentalities * * * or political subdivisions" (Tax Law § 1116 [a]). Accordingly, the present exemption speaks solely in terms of the governmental status of the seller of the petroleum, and cannot be read to depend upon the status of the buyer. As the Court of Appeals noted in *Matter of Grace v New York State Tax Commn.* (37 NY2d 193, 196): "An exemption from taxation 'must clearly appear, and the party claiming it must be able to point to some provision of law plainly giving the exemption'

*(People ex rel. Savings Bank of New London v Coleman,* 135 NY 231, 234; see *Matter of Young v Bragalini,* 3 NY2d 602, 605-606, *supra).* Indeed, if a statute or regulation authorizing an exemption is found, it will be 'construed against the taxpayer', although the interpretation should not be so narrow and literal as to defeat its settled purpose (see *Engle v Talarico,* 33 NY2d 237, 240; *People ex rel. Watchtower Bible & Tract Soc. v Haring,* 8 NY2d 350, 358; *People ex rel. Mizpah Lodge v Burke,* 228 NY 245, 247-248). This is because an exemption is not a matter of right, but is allowed only as a matter of legislative grace (cf., e.g., *Colgate v Harvey,* 296 US 404, 435)" *(see, Matter of Koner v Procaccino,* 39 NY2d 258, 264).

It is evident from the evolution of the gross receipts tax that when the Legislature intended to exempt a particular petroleum vendor from the tax on gross receipts, it either defined oil company in a very narrow manner *(see,* Tax Law § 182 [2]), or explicitly excluded particular vendors from the definition of oil company or petroleum business *(see,* Tax Law § 182-a [2]; § 305). When the Legislature intended to exempt sales to a particular purchaser, e.g., a residential purchaser or purchaser for resale, it excluded those sales from the definition of gross receipts subject to the tax *(see,* Tax Law § 182-a [2] [b]; § 303 [b]). Because the Legislature previously exempted sales to the State and its political subdivisions by this latter device *(see,* L 1981, ch 1043, § 62) and did not do so under article 13-A, we conclude that the Legislature did not intend to exempt the State or its political subdivisions from tax liability for purchases from petroleum businesses subject to the tax. Accordingly, the order at Special Term should be affirmed.

LAZER, J. P., MANGANO and NIEHOFF, JJ., concur.

Order of the Supreme Court, Nassau County, dated August 21, 1984, affirmed, with costs.